# EXHIBIT 1

# Case Docket Entries

| | | | |
|---|---|---|---|
| Court: | **Circuit** | County: | **02 - Berkeley** | Case Number: | **CC-02-2019-C-101** |
| Judge: | **Michael Lorensen** | Created Date: | **3/8/2019** | Status: | **Open** |
| Case Type: | **Civil** | Case Sub-Type: | **Other** | Security Level: | **Public** |
| Style: | **Christina Vogt v. Macy's Inc.** | | | | |

| | Created Date | Event | Ref. Code | Description |
|---|---|---|---|---|
| 1 | 3/8/2019 3:16 PM | E-Filed | | Complaint |
| | 1-1 3/8/2019 | Case Information Sheet | | |
| | 1-2 3/8/2019 | Supporting Document - Civil Case Information Statement | | |
| | 1-3 3/8/2019 | Complaint - Complaint | | |
| 2 | 3/8/2019 3:16 PM | Judge Assigned | J-02006 | Michael Lorensen |
| 3 | 3/8/2019 3:16 PM | Party Added | P-001 | Christina Vogt |
| 4 | 3/8/2019 3:16 PM | Party Added | D-001 | Macy's Inc. |
| 5 | 3/8/2019 3:16 PM | Service Requested | D-001 | Plaintiff - Certified Mail |
| 6 | 3/11/2019 10:06 AM | E-Filed | | Supporting Documents - Copy Summons Served To Christina Vogt 3/7/19 For Macy's Inc |
| | 6-1 3/11/2019 | Exhibit - Copy Summons Served To Christina Vogt For Macy's Inc   3/8/19 by Certified Mail | | |
| 7 | 3/12/2019 4:02 PM | E-Filed | | Reissue/Additional Summons - Summons Iss & Mailed CMRR |
| | 7-1 3/12/2019 | Supporting Document - Summons Iss & Mailed CMRR (Macy's Inc.) | | |
| | 7-2 3/12/2019 | Transmittal | | |
| | 7-3 3/12/2019 | Summons | | |
| 8 | 3/12/2019 4:02 PM | Service Requested | D-001 | Circuit Clerk - Certified Mail - No Copy Fee |
| 9 | 3/12/2019 4:23 PM | E-Filed | | Order - Case - Order Directing Filing of an Amended Complaint |
| | 9-1 3/12/2019 | Order - Order Directing Filing of an Amended Complaint | | |
| | 9-2 3/12/2019 | Transmittal | | |
| 10 | 3/21/2019 4:33 PM | E-Filed | | Supporting Documents - Summons Iss & Mailed CMRR |
| | 10-1 3/21/2019 | Supporting Document - Summons Iss & Mailed CMRR 3/12/19 (Macy's Inc.) | | |
| 11 | 3/28/2019 12:37 PM | E-Filed | | Reissue/Additional Summons - Amended Complaint Sent CMRR |
| | 11-1 3/28/2019 | Supporting Document - Amended Complaint Sent CMRR 3/28/19 (Macy's Inc.) | | |
| | 11-2 3/28/2019 | Transmittal | | |
| | 11-3 3/28/2019 | Summons | | |
| 12 | 3/28/2019 12:37 PM | Service Requested | D-001 | Circuit Clerk - Certified Mail - No Copy Fee |
| 13 | 3/29/2019 8:28 AM | E-Filed | | Supporting Documents - Amended Complaint Sent CMRR |
| | 13-1 3/29/2019 | Supporting Document - Amended Complaint Sent CMRR 3/28/19 (Macy's, Inc.) | | |
| 14 | 3/29/2019 8:33 AM | E-Filed | | Supporting Documents - Returned Green Card From Macy's Inc / Signed |
| | 14-1 3/29/2019 | Exhibit - Returned Green Card From Macy's Inc/ Signed  3/25/19 | | |
| 15 | 4/15/2019 1:05 PM | ---------- | | Reason for Deletion: Computer Issue |
| | 15-1 4/15/2019 | ---------- - Reason for Deletion: Computer Issue | | |
| 16 | 4/15/2019 1:08 PM | ---------- | | Reason for Deletion: Duplicate Entry |
| | 16-1 4/15/2019 | ---------- - Reason for Deletion: Duplicate Entry | | |
| 17 | 4/29/2019 10:39 AM | E-Filed | | Supporting Documents - Returned Green Card From Macy's Inc/ Signed  4/8/19/ Replaces Line 15 |
| | 17-1 4/29/2019 | Exhibit - Returned Green Card From Macy's/ Signed  4/8/19/ Replaces Line 15 | | |

# COVER SHEET

E-FILED | 3/8/2019 3:16 PM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF BERKELEY COUNTY WEST VIRGINIA

**Christina Vogt v. Macy's Inc.**

**First Plaintiff:**
☐ Business    ☑ Individual
☐ Government  ☐ Other

**First Defendant:**
☑ Business    ☐ Individual
☐ Government  ☐ Other

**Judge:**  Michael Lorensen

## COMPLAINT INFORMATION

**Case Type:** Civil                          **Complaint Type:** Other

**Origin:**  ☑ Initial Filing    ☐ Appeal from Municipal Court    ☐ Appeal from Magistrate Court

**Jury Trial Requested:** ☑ Yes  ☐ No    **Case will be ready for trial by:** 8/1/2019

**Mediation Requested:** ☐ Yes  ☑ No

**Substantial Hardship Requested:** ☐ Yes  ☑ No

☐ Do you or any of your clients or witnesses in this case require special accommodations due to a disability?

    ☐ Wheelchair accessible hearing room and other facilities

    ☐ Interpreter or other auxiliary aid for the hearing impaired

    ☐ Reader or other auxiliary aid for the visually impaired

    ☐ Spokesperson or other auxiliary aid for the speech impaired

    ☐ Other:

☑ I am proceeding without an attorney

☐ I have an attorney:

## SERVED PARTIES

**Name:** Macy's Inc.

**Address:** 7 West Seventh St., Cincinnatti OH 45202

**Days to Answer:** 20          **Type of Service:** Plaintiff - Certified Mail

IN THE CIRCUIT COURT OF _____ **BERKELEY** _____

E-FILED | 3/8/2019 3:16 PM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine

## CIVIL CASE INFORMATION STATEMENT
### (Civil Cases Other than Domestic Relations)

### I. CASE STYLE:

**Plaintiff(s)**                                        Case No. _____

*Christina M. Vogt*                           Judge: _____

*PO Box 76*

*Great Cacapon, WV 25422*

vs.

**Defendant(s)**                    **Days to Answer**    **Type of Service** *Plaintiff*

*Macy's Inc.*                            30                    *court-cert.mail*

Name

*7 West Seventh St.*

Street Address

*Cincinnati OH. 45202*

City, State, Zip Code

### II. TYPE OF CASE:

- [x] General Civil
- [ ] Mass Litigation *[As defined in T.C.R. 26.04(a)]*
  - [ ] Asbestos
  - [ ] FELA Asbestos
  - [ ] Other: _____
- [ ] Habeas Corpus/Other Extraordinary Writ
- [ ] Other: _____

- [ ] Adoption
- [ ] Administrative Agency Appeal
- [ ] Civil Appeal from Magistrate Court
- [ ] Miscellaneous Civil Petition
- [ ] Mental Hygiene
- [ ] Guardianship
- [ ] Medical Malpractice

### III. JURY DEMAND: [x] Yes [ ] No   CASE WILL BE READY FOR TRIAL BY (Month/Year): *08 / 2019*

### IV. DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS?

[ ] Yes [x] No

**IF YES, PLEASE SPECIFY:**
- [ ] Wheelchair accessible hearing room and other facilites
- [ ] Reader or other auxiliary aid for the visually impaired
- [ ] Interpreter or other auxiliary aid for the deaf and hard of hearing
- [ ] Spokesperson or other auxiliary aid for the speech impaired
- [ ] Foreign language interpreter-specify language: _____
- [ ] Other: _____

Attorney Name: *Pro Se*

Firm: _____

Address: _____

Telephone: _____

[x] **Proceeding Without an Attorney**

**Representing:**
- [ ] Plaintiff
- [ ] Cross-Defendant
- [ ] 3rd-Party Plaintiff
- [ ] Defendant
- [ ] Cross-Complainant
- [ ] 3rd-Party Defendant

Original and _____ copies of complaint enclosed/attached.

Dated: *03 / 08 / 2019*   Signature: _____

**SCA-C-100:** Civil Case Information Statement (Other than Domestic Relations)      Revision Date: 12/2015

E-FILED | 3/8/2019 3:16 PM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine

Berkeley County Circuit Court
380 West South Street, Suite 3411
Martinsburg, WV 25401

2019 MAR -8 P 3 05
VIRGINIA M. SINE, CLERK

| | |
|---|---|
| Plaintiff, | ) Case No: |
| | ) |
| | ) |
| Christina M. Vogt, PRO SE | ) |
| | )   COMPLAINT |
| | ) |
| Vs. | ) |
| | ) |
| Defendant, | ) |
| | ) |
| Macy's Inc. | ) |
| | ) |

## PART I. COMPLAINT

### I. Introduction

In the case of Vogt v. Macy's, Case American Arbitration Association 01-17-0000-3022,[1] the

Plaintiff[2] suffered because of illegal and unfair practices committed by the Respondent, Macys Inc.[3].

The Plaintiff alleges the following:

### II. Overview of the Case

The Plaintiff entered into arbitration with Macys and the American Arbitration Association[4] in

January 2017. The exchanges of interrogatories did not start until May 2017 when the Arbitrator had

been finalized. After several months of deliberations where the first Arbitrator recused himself in

---

1. This case was filed with the American Arbitration Association in January 2017 and was dismissed in August 2019 – the Plaintiff made several attempts to re-open this case until the end of September 2019. She then tried to work with Macy's to seek an alternative to Arbitration, but Macy's has refused.
2. The Plaintiff was the Claimant in the case of Vogt v. Macys.
3. The Defendant in this case, Macys, Macy's Inc., etc. was the Respondent in the case of Vogt v. Macy's as noted in the first paragraph of this complaint.
4. The American Arbitration Association is also the arbitral organization, AAA, adr.org, etc.

October 2017 for reasons unknown to the Plaintiff – although the Plaintiff had stated to AAA in an email she did not feel that the process was fair and the Arbitrator seemed biased. AAA accidentally forwarded this confidential email to the Arbitrator. During the next conference call, the Plaintiff and that Arbitrator discussed his recusal, and the Plaintiff asked this first Arbitrator to continue with the case as she felt he was a truly ethical man. However, for reasons unknown to her, (but the Plaintiff highly suspects AAA pushed the recusal of this Arbitrator) this Arbitrator recused himself, and a second Arbitrator was chosen. A new case management team was appointed. It is this second team that caused the legal issues, as the first team was very fair and professional.

The second Arbitrator was rude, demeaning and at times emotionally abusive to the Plaintiff, who was suffering from, and on medication for, a Mood Disorder (Depression).  She also had elements of stress disorder. This was known to all involved, including AAA, Macys, and the Arbitrator. Because this second Arbitrator was noticeably biased, the Plaintiff requested that AAA recuse this Arbitrator, but the Respondent, Macys, refused; thus, AAA also refused. However, in their rules, AAA needs "probable cause", not necessarily joint-approval of the Plaintiff (Claimant) and the Respondent.

During this time, the Plaintiff said she had spoken to four lawyers, including one professor of law at West Virginia University (WVU), and all had unanimously agreed that this Arbitrator did indeed seem biased. This was pointed out to the Plaintiff's AAA case manager on numerous occasions via email.

Because the case management team did nothing about the numerous complaints over several weeks describing the number of egregious acts violating fairness and legality, the Plaintiff felt it necessary to reach out within the same organization (i.e., AAA) as it was not clear to her that she could not. She spoke to the Assistant to the President, Kron Vollmer, who the Plaintiff was told would,

"help her." Ms. Vollmer never told the Plaintiff that she had broken AAA's rules. In fact, during this approximate 20-minute conversation, Ms. Vollmer said she would help the Plaintiff. Shortly thereafter, the Plaintiff got a warning from her case management team that she could not go outside that team for help. If any was needed, they would go outside the team. The Plaintiff spoke to the VP overseeing that case management group, and she agreed it would not happen again. The Plaintiff was seemingly forgiven for her breach.

Despite the fact that the Plaintiff tried unsuccessfully to recuse this Arbitrator while the case management team thwarted her efforts, and Macys was obviously in favor of retaining this Arbitrator, the Plaintiff told her case management team via email she would have to tell the Arbitrator about her concerns in the conference call before the hearing. She has those emails where she articulated her intentions and the content of her concerns to the case management team and no one, -- including her case manager at AAA – advised her not to mention her well-documented concerns. One lawyer the Plaintiff spoke to suggested she file a complaint with the PA State Bar, so the Plaintiff filed a complaint with the PA State Bar Association, but made it vague enough to hopefully encourage recusal but not punish the Arbitrator in any way. Her case management team was aware of this, and no one reprimanded her for filing this complaint with the PA State Bar Association.

Finally, a call to schedule a hearing date took place in August 2018. On the call, only the Arbitrator, Macys and the Plaintiff were present. AAA breached their duty (and broke the rules) by not supervising the call as scheduled. The Arbitrator demanded they proceed with the call regardless, despite this violation of the rules.  The Arbitrator said that AAA allows him to do this, "all the time." This strongly signifies that the rules are negotiable with AAA when dealing with Macys or the Arbitrator, but clearly not for the Plaintiff.

During this call, Macy's representative breached confidentiality with the Arbitrator, thus, also breaking the rules. Consequently, the Plaintiff had no choice but to open up discussion with the Arbitrator outlining her concerns about him. This Arbitrator told the Plaintiff to file a Motion for Recusal, and Macy's told him the Plaintiff already had, but Macy's, "wanted to keep him." This was not to be discussed because very likely, this would bias an already biased Arbitrator. Macys violated the rules of confidentiality and was disrespectful to the Plaintiff, but AAA did nothing about this.

Regardless, the Plaintiff told the Arbitrator she felt he had been extremely unfair in many of his decisions because they generally reflected what Macy's had stated they wanted early on in the case. The Plaintiff actually documented these biased decisions in a chart to the AAA and Macy is as well as other pertinent documents highlighting that the Plaintiff felt she was being treated unfairly. After this case was administratively dismissed, another lawyer (the fifth one) told the Plaintiff she could not believe the bias she suffered.

Nonetheless, when the AAA finally joined this call approximately fifteen minutes later, the Plaintiff had finished her conversation with the Arbitrator, and she spoke to the case manager telling him what she had told the Arbitrator. She did not call names, did not swear, did not yell, and did not say anything, which had not been previously disclosed to AAA.

Five days later the Arbitrator recused himself, and after his voluntary recusal, the AAA then told the Plaintiff she had been "disrespectful" to the Arbitrator; consequently, they refused to administer her case. The definition for disrespectful is opinionated and contextual, thus rendering this decision very questionable due to the extreme double-standards. When the Plaintiff asked for specifics or documentation to support this claim, none were given.

The case is still open, but the AAA has administratively closed it. Subsequently, Macy's has

stated they do not want to use anyone but the AAA to administer her case, although the Plaintiff has suggested other options. At this time, her case remains in legal limbo. It was not closed by the Arbitrator, the AAA simply refused to administer it.

### III. Jurisdiction

Jurisdiction is to be established as West Virginia as the case was a West Virginia case and all proceedings were conducted under WV and Federal law.[5] There is nothing to prevent hearing this case in Circuit Court at a jury trial in the State of West Virginia.

This is not an appeal but a complaint and all statute of limitations apply as a lawsuit filed in the State of West Virginia. The statutes of limitations start as of June 2018 (Summary Judgment) when the Plaintiff realized how dishonest Macys had been during the entire arbitration proceedings.

### IV. Causes of Action

### CAUSE OF ACTION ONE:  FALSE ADVERTISING

Macys violated the Plaintiff's right to a fair and neutral arbitral process. Specifically, The Plaintiff pointed out several times that her Arbitrator did not seem "neutral" as almost all of the decisions favored the Defendant to such an extent, that the Plaintiff was not allowed adequate discovery.

In violation of the National Arbitration Association (NAA) standard,[6] the Plaintiff was not allowed access to Macy's employees unless she went through the Macy's Representative who denied

---

5. The case resided in WV and the AAA decided that the original case be heard under an Arbitrator who was licensed in WV to practice law in arbitration. It would cause considerable hardship to have this case heard outside the State of WV.
6. NAA, a Task Force on Alternative Dispute Resolution in Employment was created in 1995. The Task Force consisted of representatives of the American Bar Association, American Civil Liberties Union, Federal Mediation and Conciliation

knowing about persons of interest for the Plaintiff to depose. When the Plaintiff asked the Macy's Representative if a conference call could be scheduled with a Macy's employee who would be able to identify potential deponents, Macy's would not cooperate although the Arbitrator had ordered Macy's to do so. Macy's ignored the request. When this was brought out and the Plaintiff filed a Motion to Compel, it was denied by the Arbitrator. Therefore, the Plaintiff could not get the contact information of potential deponents to depose to prove or strengthen her case. The Plaintiff called these obfuscations obstruction and defiance of the rules of AAA. Nothing was done to remedy this in the Plaintiff's behalf.

This clearly violates the AAA's Principle 13.[7] "Access to Information: No party should ever be denied the right to a fundamentally-fair process due to an inability to obtain information material to a dispute. Consumer ADR agreements which provide for binding arbitration should establish procedures for arbitrator-supervised exchange of information prior to arbitration, bearing in mind the expedited nature of arbitration." This allowance of the Plaintiff to be stonewalled is not "neutral" but also constitutes Negligence and a Breach of Contract.

The Plaintiff had to rely on unusual means to prove her case, which did not rely on traditional discovery methods including the use of polygraphs, which are generally not allowed in court. This also imposed a financial burden on the Plaintiff. Polygraph use also highlighted to AAA and the Arbitrator that Macys had violated the law by concealment, witness tampering and falsifying documentation,

---

Service, National Academy of Arbitrators, National Employment Lawyers Association, and Society of Professionals in Dispute Resolution. On May 9, 1995, the Task Force issued its "Protocol" recommendations. Arnold M Zack, NAA President 1994-1995, considered the Protocol "a rather modest undertaking to protect the credibility of labor management arbitration and to provide guidance to NAA Arbitrators who might be undertaking such [employment arbitration] work." Retrieved from https://premiadr.com/category/the-adr-blog/ January 30, 2019.)

[7]. Consumer Due Process Protocol Statement of Principles National Consumer Disputes Advisory Committee Statement of Principles. Retrieved January 12, 2019 from https://www.adr.org/sites/default/files/document_repository/Consumer%20Due%20Process%20Protocol%20(1).pdf

and perjury, all resulting in obstruction. This was egregious since from day one, Macys stated they would file a Summary Judgment and the Plaintiff faced the real possibility she would not have the necessary evidence to prove her case. Under WV policy, it states that arbitration is a "fair and viable alternative to court litigation." AAA cannot guarantee this because built within the process, and taken advantage of by Macys, AAA policies and rules allow for extreme bias up to and including the right to deny reasonable evidence necessary for one's case; dismissal of a Cause of Action when the Plaintiff was denied the ability to gather evidence; and the ability to give Macys every advantage including breaking the law with impunity. Moreover, the Plaintiff was in arbitration for more than a year, which questions the cost, and efficiency if this compared to courts.

Not unlike most individuals, when the Plaintiff agreed to arbitration, she had the belief that Macy's had to be held to Federal laws as is noted in their contract filed the AAA. The Plaintiff felt that given the reputation of the AAA, Macy's contractual promise to adhere to the law, and promise of neutrality by AAA and its Arbitrators, she would have a fair outcome. Neither the case managers nor the Arbitrator was "neutrals," which is clearly articulated in all AAA documentation. The Plaintiff avers Macys duped her into this arbitration based upon false advertising with the promise of laws governing the process, neutral arbitrators and neutral case managers.

## CAUSE OF ACTION TWO:

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

All of those involved in this case knew the Plaintiff was depressed and on medication. It was a tragic experience for this Plaintiff to be repeatedly victimized from the time she was victimized at work, to the AAA where she was victimized and harassed by Macys and the Arbitrator while the case

management team did nothing to ensure her treatment was fair and equitable. In other words, Macy's dishonesty further victimized the Plaintiff, and the Plaintiff's medication was increased during arbitration and her diagnosis worsened. She stated this to both AAA and Macy's on more than one occasion. This was also corroborated by the Plaintiff's psychiatrist in deposition.

Other examples include Macy's would dictate the terms, conditions and rules to the Plaintiff — often overlooking the Arbitrator -- in a way meant to harass. This representative was also uncooperative and would answer only those interrogatories she felt like, and often those were interrogatory answers were written in a nonsensical manner. Macy's representative would also repeatedly send the Plaintiff random nonsense to which to respond.

### CAUSE OF ACTION THREE: BREACH OF CONTRACT

A Breach of Contract occurred in two ways: First, Macys violated the terms and conditions of its contract[8] citing rules filed with AAA, which is also its contract for Arbitration with the Plaintiff. Because this contract was filed with the AAA as the standard for arbitration, AAA has a duty to see it is upheld. What the Macy's contract did not cover, defaulted to AAA rules.[9] Macys kept the Plaintiff from fulfilling her three depositions because Macys refused to allow the Plaintiff to get the names of those people whom she wished to question or depose. Other breaches also occurred and the Plaintiff will bring evidence forward during discovery. Macys did not follow its terms and conditions for discovery and made a mockery of the process; thus, it violated its contract with the Plaintiff.

---

8. Macy's Inc. Solutions In Store, "The Plan Early Dispute and Resolution Procedures Dated June 1, 2014.
9. American Arbitration Association Rules, Forms and Fees. Retrieved from https://www.adr.org/Rules

## CAUSE OF ACTION FOUR: NEGLIGENCE

In reference to Negligence, it was a well-known fact to all concerned that the Plaintiff was suffering from mood disorder. All of those involved in this case knew she was depressed and on medication. It was a tragic experience for this Plaintiff to be repeatedly victimized from the time she was victimized at work, to the AAA where she was victimized and harassed by Macy's and the Arbitrator while the case management team did nothing to ensure her treatment was fair and equitable. In other words, Macys further victimized the Plaintiff's medication had to be increased during arbitration and her diagnosis worsened. She stated this to both AAA and Macy's on more than one occasion.

Moreover, the unfairness of closing a case for no apparent reason has left this Plaintiff devastated having to try to navigate the legal system without the resources to do so.

It is well known that the four elements of Negligence are as follows:

- Duty - The Defendant owed a legal duty to the Plaintiff under the circumstances;
- Breach - The Defendant breached that legal duty by acting or failing to act in a certain way;
- Causation - It was the Defendant's actions (or inaction) that actually caused the Plaintiff's injury; and
- Damages - The Plaintiff was harmed or injured because of the Defendant's actions.

These above all apply in that the legal duty to provide a fair, equitable venue for the Plaintiff to have her case heard was violated. The Defendant is legally reprehensible for its actions and non-actions in causing further harm to the Plaintiff's mental and emotional health. The Plaintiff was harmed financially and mentally/emotionally as well.

### CAUSE OF ACTION FIVE: OBSTRUCTION

Definition. 18 U.S.C. § 1503 defines "obstruction of justice" as an act that "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice."[10] In this case, there exists evidence to show Macy's did commit obstruction in the arbitration case of case of Vogt v. Macys via witness tampering, document alterations, concealment, and perjury.

This does not appear to be the only situation in which Macys has outrageously denied people information in arbitration. In the case of Hurn v. Macys[11] it appears that the arbitrator fell asleep during the proceedings, and the Macys representative refused to verify if she was a lawyer or not. Whether someone is a lawyer, or not, is critical to disclosure during arbitration under the AAA rules. Moreover, if Macys has done this to this Plaintiff with such ease, it is likely this has been the modus operandi for Macys.  Arbitration offers the perfect venue for such appalling breach of legal and ethical duties.

### V. Summation

Not only does this case highlight the terrible bias and lack of due process for Pro Se Claimants and those without lawyers or the money to procure one, under the AAA where the number of Claimants (i.e., Plaintiffs) who lose in Arbitration far outweigh the court system, it is clear that the process does not work as advertised.  Macys defied any sense of fair treatment compared to the

---

[10]. Obstruction of Justice. Definition. Wex Legal Dictionary. Retrieved March 3, 2019 from
    https://www.law.cornell.edu/wex/obstruction_of_justice
[11]. HURN v. MACY'S, INCORPORATED; DAVID HURN, Plaintiff-Appellant, v. MACY'S, INCORPORATED, Defendant-Appellee.
    United States Court of Appeals, Seventh Circuit. Submitted June 22, 2018. Decided June 25, 2018.

normal judicial system, especially as a citizen's entitlement. Thus, billing arbitration as an "alternative to court" falsely advertises its function.

The Plaintiff also decried discrimination due to SES and felt that the Arbitrator nor AAA did not care that she did not have the funds for several processes that this Arbitrator wanted her to pursue such as calling expert witnesses. Had the Plaintiff known she would not have been treated fairly and equitably in the Arbitration process facilitated by the American Arbitration Association, she would never had agreed to this arbitration agreement[12] presented by Macys.

Finally, Macys did not adhere to West Virginia Law[13] in this arbitration proceeding of Vogt v. Macys. They were in clear violation of the provision in the Statue 55-10-2.3. The presentation given during new-hire at Macys did not disclose the real nature of arbitration and the unethical and allegedly illegal acts committed by Macys. Because of that misinformation, the Plaintiff was duped into this horribly unethical process which caused her further pain and suffering.

Christina M. Vogt
PO Box 76
Great Cacapon, WV 25422
304-261-5783

---

12. Supra Note 6.
[13]. 2017 West Virginia Code CHAPTER 55. ACTIONS, SUITS AND ARBITRATION; JUDICIAL SALE.
ARTICLE 10. ARBITRATION.
§55-10-2. Declaration of public policy; legislative findings.
Universal Citation: WV Code § 55-10-2 (2017)
The Legislature finds that:
(1) Arbitration, as a form of alternative dispute resolution, offers in many instances a more efficient and cost-effective alternative to court litigation.
(2) The United States has a well-established federal policy in favor of arbitral dispute resolution, as identified both by the Federal Arbitration Act, 9 U.S.C. §1, et seq., and the decisions of the Supreme Court of the United States.
(3) Arbitration already provides participants with many of the same procedural rights and safeguards as traditional litigation, and ensuring that those rights and safeguards are guaranteed to participants will ensure that arbitration remains a fair and viable alternative to court litigation and guarantee that no party to an arbitration agreement is unfairly prejudiced by agreeing to an arbitration agreement or provision.

**REGISTERED AGENT OF SERVICE**

CORPORATE CREATIONS NETWORK INC.

126 East Burke Street

Martinsburg, WV 25401

**CORPORATE ADDRESS**

MACY'S INC.

7 West Seventh Street

Cincinnati, Oh 45202

## PART II

### INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, Plaintiff hereby submits the following Interrogatories to Defendant. Plaintiff requests that Defendant serve its answers in writing within 30 days of service of these Interrogatories.

For the purpose of these Interrogatories only, Plaintiff has used the definitions set forth below.

### I.  Definitions

As used in these Interrogatories:

1. "Agreement" means a contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons.

2. "Any" means one or more.

3. "Or" means "and/or"; and means "and/or".

4. "Communication" means any disclosure, transfer, or exchange of information or opinion, however made.

5. "Consultant" means any person that prepares, constructs, assembles a response and/or documents or otherwise fulfills a service for Macy's. It could be an organization, a person(s). Law firms, lawyers, paralegals, or any other sort of service that is providing a service to Macys.

6. The phrases "describe in detail" or "explain" or "list" or "provide" as used in these interrogatories includes a request for a complete description and explanation of the facts, circumstances, analysis, opinion and other information relating to (as that phrase is defined below) the subject matter of a specific interrogatory.

7. "Document" means any written, recorded, or graphic material of any kind, whether prepared by you or by any other person, which is in your possession, custody, or control. The term includes agreements; contracts; letters; telegrams; inter-office communications; memoranda; reports; records; instructions; specifications; notes; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; electronic-mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs.

    The term "document" also includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers; any such document is to be produced in a reasonably legible and usable form. The term "document" includes all drafts of a document and all copies that differ in any respect from the original, including any notation, underlining, marking, or information not on the original. The term also includes information stored in, or accessible through, computer or other information retrieval systems (including any computer

archives or back-up systems), together with instructions and all other materials necessary to use or interpret such data compilations.

Without limitation on the term "control" as used in the preceding paragraph, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person.

8. "arrangement with a consultant or outside adviser, consultant, etc." means any proposed or actual agreement, arrangement, policy, program, practice, term or condition of your company that:

9. "Identify" or "identity" means to state or a statement of:

a. in the case of a person other than a natural person, its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer, as well as, if it has a person other than a natural person that ultimately controls it, that other person's name, the address of that person's principal place of business (including zip code), that other person's telephone number, and the name of that other person's chief executive officer;

b. in the case of a natural person, his or her name, business address and telephone number, employer, and title or position;

c. in the case of a communication, its date, type (e.g., telephone conversation or discussion), the place where it occurred, the identity of the person who made the communication, the identity of the person who received the communication, the identity of each other person when it was made, and the subject matter discussed;

d. in the case of a document, the title of the document, the author, the title or position of the author, the addressee, each recipient, the type of document, the subject matter, the date of preparation, and its number of pages; and

e. in the case of an agreement, its date, the place where it occurred, the identity of all persons who were parties to the agreement, the identity of each person who has knowledge of the agreement and all other persons present when it was made, and the subject matter of the agreement.

10. "Including" means including, but not limited to.

11. "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office or other business or legal entity, whether private or governmental.

12. "Relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, studying, commenting or reporting on, mentioning, analyzing, or referring, alluding, or pertaining to, in whole or in part.

13. "Relevant time period" means the time period stated in paragraph 1 of the Instructions.

14. "Year" means calendar year or the twelve-month period on which your business records are based; if the latter is used in responding to a interrogatory, specify the twelve month period used.

15. "You," "your" or "your company" means the American Arbitration Association or ADR.org or any other name used to identify this corporation such as AAA, etc.

16. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted. The term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following interrogatories all information or documents that would be excluded absent this definition.

## II. Instructions

1. Unless otherwise specified, these interrogatories are limited to the time period from January 1, 2017, to and including the date of service of these interrogatories.

2. For any paragraph that requests information relating to any type of records or documents, personnel information, contractor information, the information called for includes all information in your possession, custody or control maintained in both the United States or in any other country.

3. Where knowledge, information, or documents are requested, such request encompasses knowledge, information or documents in your possession, custody or control, or in the possession, custody or control of your staff, agents, employees, representatives and, unless privileged, attorneys, or any other person who has possession, custody or control of your proprietary knowledge, information or documents.

4. Pursuant to Fed. R. Civ. P. 26(e), you are under a duty seasonably to amend any answer to these interrogatories for which you learn that the answer is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to us during the discovery process or in writing.

5. For any interrogatory or part of an interrogatory which you refuse to answer under a claim of privilege, submit a sworn or certified statement from your counsel or one of your employees in which you identify the nature of the information withheld; specify the grounds of the claimed privilege and the paragraph of these interrogatories to which the information is responsive; and identify each person to whom the information, or any part thereof, has been disclosed.

6. Answer each interrogatory fully. If you object to any interrogatory, state the reasons for objection and answer to the extent the interrogatory is not objectionable. If you are unable to answer an interrogatory fully, submit as much information as is available, explain why your answer is incomplete, and identify or describe all other sources of more complete or accurate information.

7. For any record or document responsive or relating to these interrogatories which is known to have been destroyed or lost, or is otherwise unavailable, identify each such document by author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document.

8. No agreement, understanding, or stipulation by the Department of Justice or any of its representatives purporting to modify, limit, or otherwise vary these interrogatories shall be valid or binding on the Department of Justice unless confirmed or acknowledged in writing (or made of record in open court) by a duly authorized representative thereof.

9. Please sign and date this set of interrogatories when completed. This signature is an affidavit of truth, and is legally binding under the law.

### III. Interrogatories First Set

1.  Who had any involvement in this case for Macy's? Please provide all names and contact information for all those involved as Macy's employees, Macy's consultants, lawyers, etc., AAA contacts etc.

2.  Please provide the Macy's case file with all communications including those not seen by AAA and the Plaintiff such as internal communications and any and all communications with any legal staff including Macy's internal legal staff and Macy's external lawyers such as Steptoe and Johnson, outside consultants and any communications with the AAA about this case or the Macy's Inc. Representative.

3.  Please provide any documentation that was requested during the AAA case such as theft notes, records, etc. where the Plaintiff has stated there was a large investigation in Home Pack/Pack or Returns during the first half of 2016, and documentation about the employment of Rebecca Lynn Wills, any other notes and or records or requests not previously given to the Plaintiff (i.e., Claimant).

4.  Please name all the people who prepared the affidavit statements submitted to the Plaintiff (Claimant in this case). This includes those of Tonna Bonhoff, Michelle Powell, Jessica Wines, Casey Calahan, and any others submitted.

5.  Who (besides himself) prepared Jeffrey Hottle for deposition?

6.  Please give the name and contact information for Ms. Avins' boss at Macys as well as any staff members of Ms. Avins team. Please provide an organizational chart for Ms. Avins' past organization if available.

7.  Please provide the last known contact information for Ms. Julie Avins.

**<u>Statement of Accuracy, Truthfulness and Completeness of Interrogatories</u>**

I, _____, attest that these interrogatories are answered fully and truthfully. This is a legally binding signature, and I understand I am fully and legally responsible for the accuracy, completeness and truthfulness of these interrogatories.

_____          _____

Name                                              Date

**Please notarize this signature below.**

## SUMMONS

⊏▪COPY

E-FILED | 3/11/2019 10:06 AM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine

IN THE CIRCUIT OF BERKELEY WEST VIRGINIA
CHRISTINA VOGT  v.  MACY'S INC.              19-C-101

Service Type:   PLAINTIFF-CERTIFIED MAIL

NOTICE TO:   MACY'S INC. 7 WEST SEVENTH ST. CINCINNATTI, OH 45202

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

THE ANSWER MUST BE MAILED WITHIN 20 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

March 8,2019                   /s/ Virginia Sine              By Belinda Parns
_____              _____              3/8/19  Deputy Clerk
Date                              Clerk

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on  _____

[ ] I certify that I personally delivered a copy of the Summons and Complaint to  _____

_____

[ ] Not Found in Bailiwick

Iss é Del. to
Christina Vogt for
Service 3/8/19

_____              _____
Date                       Server's Signature

E-FILED | 3/12/2019 4:02 PM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine

## SUMMONS

---

IN THE CIRCUIT OF BERKELEY WEST VIRGINIA

v.

Service Type:

NOTICE TO:
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

THE ANSWER MUST BE MAILED WITHIN 20 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

SERVICE:

_____          /s/ Virginia Sine_____
            Date                                    Clerk

---

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on   _____

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____

n_____

[ ] Not Found in Bailiwick

_____          _____
            Date                              Server's Signature

# SUMMONS

E-FILED | 3/12/2019 4:02 PM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine

## IN THE CIRCUIT OF BERKELEY WEST VIRGINIA
### Christina Vogt v. Macy's Inc.

Service Type:    Circuit Clerk - Certified Mail - No Copy Fee

NOTICE TO:    Macy's Inc., 7 West Seventh St., Cincinnatti, OH 45202

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Christina Vogt, P.O. Box 76, Great Cacapon, WV 25422

THE ANSWER MUST BE MAILED WITHIN 20 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

| 3/12/2019 4:02:43 PM | /s/ Virginia Sine |
|---|---|
| Date | Clerk |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

☐ Not Found in Bailiwick

| _____ | _____ |
|---|---|
| Date | Server's Signature |

/s/ Michael Lorensen
Circuit Court Judge
Ref. Code: 19EC286P

E-FILED | 3/12/2019 4:23 PM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine

## In the Circuit Court of Berkeley County, West Virginia

**Christina Vogt,**
Plaintiff,

vs.)

**Macy's Inc.,**
Defendant

)
)
)
)
)
)
)
)
)
)

Case No. CC-02-2019-C-101

### Order Directing Filing of an Amended Complaint

On a regular review of this file, the court observes that the complaint fails to conform to the requirements of the Rules of Civil Procedure.  Particularly, Rule 10(b) provides as follows:

> (b) Paragraphs; Separate Statements. All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

The Plaintiff is directed to file an amended complaint which complies with the Rules of Civil Procedure as early as practicable, but no later than 14 days from the entry of this order.

The clerk is directed to send a true and correct copy of this order to the Plaintiff at the address shown on the civil cover sheet.

**/s/ Michael Lorensen**
Circuit Court Judge
23rd Judicial Circuit

Note: The electronic signature on this order can be verified using the reference code that appears in the upper-left corner of the first page. Visit www.courtswv.gov/e-file/ for more details.

E-FILED | 3/21/2019 4:33 PM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usp*

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)      $
☐ Return Receipt (electronic)    $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required       $
☐ Adult Signature Restricted Delivery $

Postage
$

Total Postage and Fees
$

Sent To  Macy's Inc.

Street and Apt. No., or PO Box No.  W. 7th St

City, State, ZIP+4®  Cincinnati, OH 45202

19-C-101
3/12/19

Postmark
Here

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7017 3380 0000 1664 8316

E-FILED | 3/28/2019 12:37 PM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine

Berkeley County Circuit Court
380 West South Street, Suite 3411
Martinsburg, WV 25401

|  |  |
|---|---|
| Plaintiff, | ) Case No: CC-02-2019-C-101 |
| | ) |
| Christina M. Vogt, PRO SE | ) AMENDED COMPLAINT |
| | ) |
| Vs. | ) |
| | ) |
| Defendant, | ) |
| Macy's Inc. | ) |

**PART I. COMPLAINT**

**I. Introduction**

1.     In the case of Vogt v. Macy's, Case American Arbitration Association 01-17-0000-3022,[1] the

Plaintiff[2] suffered because of illegal and unfair practices committed by the Respondent, Macys Inc.[3].

The Plaintiff alleges the following:

**II. Overview of the Case**

2.     The Plaintiff entered into arbitration with Macys and the American Arbitration Association[4] in

January 2017. The exchanges of interrogatories did not start until May 2017 when the Arbitrator had

been finalized.

---

1. This case was filed with the American Arbitration Association in January 2017 and was dismissed in August 2019 – the Plaintiff made several attempts to re-open this case until the end of September 2019. She then tried to work with Macy's to seek an alternative to Arbitration, but Macy's has refused.
2. The Plaintiff was the Claimant in the case of Vogt v. Macys.
3. The Defendant in this case, Macys, Macy's Inc., etc. was the Respondent in the case of Vogt v. Macy's as noted in the first paragraph of this complaint.
4. The American Arbitration Association is also the arbitral organization, AAA, adr.org, etc.

3.     After several months of deliberations where the first Arbitrator recused himself in October 2017 for reasons unknown to the Plaintiff – although the Plaintiff had stated to AAA in an email she did not feel that the process was fair and the Arbitrator seemed biased. AAA accidentally forwarded this confidential email to the Arbitrator.

5.     During the next conference call, the Plaintiff and that Arbitrator discussed his recusal, and the Plaintiff asked this first Arbitrator to continue with the case as she felt he was a truly ethical man. However, for reasons unknown to her, (but the Plaintiff highly suspects AAA pushed the recusal of this Arbitrator) this Arbitrator recused himself, and a second Arbitrator was chosen.

6.     A new case management team was appointed. It is this second team that caused the legal issues, as the first team was very fair and professional.

7.     The second Arbitrator was rude, demeaning and at times emotionally abusive to the Plaintiff, who was suffering from, and on medication for, a Mood Disorder (Depression).  She also had elements of stress disorder. This was known to all involved, including AAA, Macys, and the Arbitrator.

8.     Because this second Arbitrator was noticeably biased, the Plaintiff requested that AAA recuse this Arbitrator, but the Respondent, Macys, refused; thus, AAA also refused. However, in their rules, AAA needs "probable cause", not necessarily joint-approval of the Plaintiff (Claimant) and the Respondent.

9.     During this time, the Plaintiff said she had spoken to four lawyers, including one professor of law at West Virginia University (WVU), and all had unanimously agreed that this Arbitrator did indeed seem biased. This was pointed out to the Plaintiff's AAA case manager on numerous occasions via email.

10.     Because the case management team did nothing about the numerous complaints over several

weeks describing the number of egregious acts violating fairness and legality, the Plaintiff felt it

necessary to reach out within the same organization (i.e., AAA) as it was not clear to her that she

could not.

11.     The Plaintiff spoke to the Assistant to the President, Kron Vollmer, who the Plaintiff was told

would, "help her." Ms. Vollmer never told the Plaintiff that she had broken AAA's rules. In fact, during

this approximate 20-minute conversation, Ms. Vollmer said she would help the Plaintiff.

12.     Shortly thereafter, the Plaintiff got a warning from her case management team that she could

not go outside that team for help. If any was needed, they would go outside the team. The Plaintiff

spoke to the VP overseeing that case management group, and she agreed it would not happen again.

The Plaintiff was seemingly forgiven for her breach.

13.     Despite the fact that the Plaintiff tried unsuccessfully to recuse this Arbitrator while the case

management team thwarted her efforts, and Macys was obviously in favor of retaining this Arbitrator,

the Plaintiff told her case management team via email she would have to tell the Arbitrator about her

concerns in the conference call before the hearing.

14.     The Plaintiff has those emails where she articulated her intentions and the content of her

concerns to the case management team and no one, -- including her case manager at AAA – advised

her not to mention her well-documented concerns.

15.     One lawyer the Plaintiff spoke to suggested she file a complaint with the PA State Bar, so the

Plaintiff filed a complaint with the PA State Bar Association, but made it vague enough to hopefully

encourage recusal but not punish the Arbitrator in any way. Her case management team was aware of

this, and no one reprimanded her for filing this complaint with the PA State Bar Association.

16.     Finally, a call to schedule a hearing date took place in August 2018. On the call, only the

Arbitrator, Macys and the Plaintiff were present. AAA breached their duty (and broke the rules) by not supervising the call as scheduled.

16.     The Arbitrator demanded they proceed with the call regardless, despite this violation of the rules. The Arbitrator said that AAA allows him to do this, "all the time." This strongly signifies that the rules are negotiable with AAA when dealing with Macys or the Arbitrator, but clearly not for the Plaintiff.

17.     During this call, Macy's representative breached confidentiality with the Arbitrator, thus, also breaking the rules. Consequently, the Plaintiff had no choice but to open up discussion with the Arbitrator outlining her concerns about him. This Arbitrator told the Plaintiff to file a Motion for Recusal, and Macy's told him the Plaintiff already had, but Macy's, "wanted to keep him." This was not to be discussed because very likely, this would bias an already biased Arbitrator. Macys violated the rules of confidentiality and was disrespectful to the Plaintiff, but AAA did nothing about this.

18.     Regardless, the Plaintiff told the Arbitrator she felt he had been extremely unfair in many of his decisions because they generally reflected what Macy's had stated they wanted early on in the case. The Plaintiff actually documented these biased decisions in a chart to the AAA and Macy is as well as other pertinent documents highlighting that the Plaintiff felt she was being treated unfairly.

19.     After this case was administratively dismissed, another lawyer (the fifth one) told the Plaintiff she could not believe the bias she suffered.

20.     Nonetheless, when the AAA finally joined this call approximately fifteen minutes later, the Plaintiff had finished her conversation with the Arbitrator, and she spoke to the case manager telling him what she had told the Arbitrator. She did not call names, did not swear, did not yell, and did not say anything, which had not been previously disclosed to AAA.

21.     Five days later the Arbitrator recused himself, and after his voluntary recusal, the AAA then told the Plaintiff she had been "disrespectful" to the Arbitrator; consequently, they refused to administer her case.

22.     The definition for disrespectful is opinionated and contextual, thus rendering this decision very questionable due to the extreme double-standards. When the Plaintiff asked for specifics or documentation to support this claim, none were given.

23.     The case is still open, but the AAA has administratively closed it. Subsequently, Macy's has stated they do not want to use anyone but the AAA to administer her case, although the Plaintiff has suggested other options. At this time, her case remains in legal limbo. It was not closed by the Arbitrator, the AAA simply refused to administer it.


### III. Jurisdiction

24.     Jurisdiction is to be established as West Virginia as the case was a West Virginia case and all proceedings were conducted under WV and Federal law.[5] There is nothing to prevent hearing this case in Circuit Court at a jury trial in the State of West Virginia.

25.     This is not an appeal but a complaint and all statute of limitations apply as a lawsuit filed in the State of West Virginia. The statutes of limitations start as of June 2018 (Summary Judgment) when the Plaintiff realized how dishonest Macys had been during the entire arbitration proceedings.

---

5. The case resided in WV and the AAA decided that the original case be heard under an Arbitrator who was licensed in WV to practice law in arbitration. It would cause considerable hardship to have this case heard outside the State of WV.

## IV. Causes of Action

### CAUSE OF ACTION ONE:  FALSE ADVERTISING

26.     Macys violated the Plaintiff's right to a fair and neutral arbitral process. Specifically, The Plaintiff pointed out several times that her Arbitrator did not seem "neutral" as almost all of the decisions favored the Defendant to such an extent, that the Plaintiff was not allowed adequate discovery.

27.     In violation of the National Arbitration Association (NAA) standard,[6] the Plaintiff was not allowed access to Macy's employees unless she went through the Macy's Representative who denied knowing about persons of interest for the Plaintiff to depose. When the Plaintiff asked the Macy's Representative if a conference call could be scheduled with a Macy's employee who would be able to identify potential deponents, Macy's would not cooperate although the Arbitrator had ordered Macy's to do so. Macy's ignored the request.

28.     When this was brought out and the Plaintiff filed a Motion to Compel, it was denied by the Arbitrator. Therefore, the Plaintiff could not get the contact information of potential deponents to depose to prove or strengthen her case. The Plaintiff called these obfuscations obstruction and defiance of the rules of AAA.  Nothing was done to remedy this in the Plaintiff's behalf.

29.     This clearly violates the AAA's Principle 13.[7] "Access to Information: No party should ever be denied the right to a fundamentally-fair process due to an inability to obtain information material to a

---

[6]. NAA, a Task Force on Alternative Dispute Resolution in Employment was created in 1995. The Task Force consisted of representatives of the American Bar Association, American Civil Liberties Union, Federal Mediation and Conciliation Service, National Academy of Arbitrators, National Employment Lawyers Association, and Society of Professionals in Dispute Resolution. On May 9, 1995, the Task Force issued its "Protocol" recommendations. Arnold M Zack, NAA President 1994-1995, considered the Protocol "a rather modest undertaking to protect the credibility of labor management arbitration and to provide guidance to NAA Arbitrators who might be undertaking such [employment arbitration] work." Retrieved from https://premiadr.com/category/the-adr-blog/ January 30, 2019.)

[7]. Consumer Due Process Protocol Statement of Principles National Consumer Disputes Advisory Committee

dispute. Consumer ADR agreements which provide for binding arbitration should establish procedures for arbitrator-supervised exchange of information prior to arbitration, bearing in mind the expedited nature of arbitration."  This allowance of the Plaintiff to be stonewalled is not "neutral" but also constitutes Negligence and a Breach of Contract.

30.     The Plaintiff had to rely on unusual means to prove her case, which did not rely on traditional discovery methods including the use of polygraphs, which are generally not allowed in court. This also imposed a financial burden on the Plaintiff. Polygraph use also highlighted to AAA and the Arbitrator that Macys had violated the law by concealment, witness tampering and falsifying documentation, and perjury, all resulting in obstruction.

31.     This was egregious since from day one, Macys stated they would file a Summary Judgment and the Plaintiff faced the real possibility she would not have the necessary evidence to prove her case.

32.     Under WV policy, it states that arbitration is a "fair and viable alternative to court litigation." AAA cannot guarantee this because built within the process, and taken advantage of by Macys, AAA policies and rules allow for extreme bias.

33.     This bias allowed for the right to deny reasonable evidence necessary for one's case; dismissal of a Cause of Action when the Plaintiff was denied the ability to gather evidence; and the ability to give Macys every advantage including breaking the law with impunity.

34.     Moreover, the Plaintiff was in arbitration for more than a year, which questions the cost, and efficiency of this arbitration compared to courts.

---

Statement of Principles. Retrieved January 12, 2019 from
https://www.adr.org/sites/default/files/document_repository/Consumer%20Due%20Process%20Protocol%20(1).pdf

35.     Not unlike most individuals, when the Plaintiff agreed to arbitration, she had the belief that Macy's had to be held to Federal laws as is noted in their contract filed the AAA. The Plaintiff felt that given the reputation of the AAA, Macy's contractual promise to adhere to the law, and promise of neutrality by AAA and its Arbitrators, she would have a fair outcome.

36.     Neither the case managers nor the Arbitrator was "neutrals," which is clearly articulated in all AAA documentation. The Plaintiff avers Macys duped her into this arbitration based upon false advertising with the promise of laws governing the process, neutral arbitrators and neutral case managers.

## CAUSE OF ACTION TWO:

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

37.     All of those involved in this case knew the Plaintiff was depressed and on medication. It was a tragic experience for this Plaintiff to be repeatedly victimized from the time she was victimized at work, to the AAA where she was victimized and harassed by Macys and the Arbitrator while the case management team did nothing to ensure her treatment was fair and equitable.

38.     In other words, Macy's dishonesty further victimized the Plaintiff, and the Plaintiff's medication was increased during arbitration and her diagnosis worsened. She stated this to both AAA and Macy's on more than one occasion. This was also corroborated by the Plaintiff's psychiatrist in deposition.

39.     Other examples include Macy's would dictate the terms, conditions and rules to the Plaintiff – often overlooking the Arbitrator -- in a way meant to harass. This representative was also uncooperative and would answer only those interrogatories she felt like, and often those were

interrogatory answers were written in a nonsensical manner. Macy's representative would also repeatedly send the Plaintiff random nonsense to which to respond.

40.     The Plaintiff pointed this harassment out to the case management team, including telling them that Macy's Representative was giving her legal information (often incorrect) and telling her what she should do. The Plaintiff complained about this unwelcome advice and internalized it as a harassing incident.

## CAUSE OF ACTION THREE: BREACH OF CONTRACT

41.     A Breach of Contract occurred in two ways: First, Macys violated the terms and conditions of its contract[8] citing rules filed with AAA, which is also its contract for Arbitration with the Plaintiff. Because this contract was filed with the AAA as the standard for arbitration, AAA has a duty to see it is upheld.

42.     What the Macy's contract did not cover, defaulted to AAA rules.[9] Macys kept the Plaintiff from *fulfilling her three depositions because Macys refused to allow the Plaintiff to get the names of those people whom she wished to question or depose. Other breaches also occurred and the Plaintiff will bring evidence forward during discovery. Macys did not follow its terms and conditions for discovery and made a mockery of the process;* thus, it violated its contract with the Plaintiff.

## CAUSE OF ACTION FOUR: NEGLIGENCE

43.     In reference to Negligence, it was a well-known fact to all concerned that the Plaintiff was *suffering from mood disorder. All of those involved in this case knew she was depressed and on* medication. It was a tragic experience for this Plaintiff to be repeatedly victimized from the time she

---

8. Macy's Inc. Solutions In Store, "The Plan Early Dispute and Resolution Procedures Dated June 1, 2014.
9. American Arbitration Association Rules, Forms and Fees. Retrieved from https://www.adr.org/Rules

was victimized at work, to the AAA where she was victimized and harassed by Macy's and the Arbitrator while the case management team did nothing to ensure her treatment was fair and equitable.

44.     In other words, Macys further victimized the Plaintiff's medication had to be increased during arbitration and her diagnosis worsened. She stated this to both AAA and Macy's on more than one occasion.

45.     Moreover, the unfairness of closing a case for no apparent reason has left this Plaintiff devastated having to try to navigate the legal system without the resources to do so.

46. It is well known that the four elements of Negligence are as follows:

- Duty - The Defendant owed a legal duty to the Plaintiff under the circumstances;

- Breach  - The Defendant breached that legal duty by acting or failing to act in a certain way;

- Causation  - It was the Defendant's actions (or inaction) that actually caused the Plaintiff's injury; and

- Damages - The Plaintiff was harmed or injured because of the Defendant's actions.

47.     These above all apply in that the legal duty to provide a fair, equitable venue for the Plaintiff to have her case heard was violated. The Defendant is legally reprehensible for its actions and non-actions in causing further harm to the Plaintiff's mental and emotional health. The Plaintiff was harmed financially and mentally/emotionally as well.

## CAUSE OF ACTION FIVE: OBSTRUCTION

48.     Definition. 18 U.S.C. § 1503 defines "obstruction of justice" as an act that "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice."[10] In this case, there exists evidence to show Macy's did commit obstruction in the arbitration case of case of Vogt v. Macys via witness tampering, document alterations, concealment, and perjury.

49.     This does not appear to be the only situation in which Macys has outrageously denied people information in arbitration. In the case of Hurn v. Macys[11] it appears that the arbitrator fell asleep during the proceedings, and the Macys representative refused to verify if she was a lawyer or not. Whether someone is a lawyer, or not, is critical to disclosure during arbitration under the AAA rules.

50.     Moreover, if Macys has done this to this Plaintiff with such ease, it is likely this has been the modus operandi for Macys.  Arbitration offers the perfect venue for such appalling breach of legal and ethical duties.

### V. Summation

51.     Not only does this case highlight the terrible bias and lack of due process for Pro Se Claimants and those without lawyers or the money to procure one, under the AAA where the number of Claimants (i.e., Plaintiffs) who lose in Arbitration far outweigh the court system, it is clear that the process does not work as advertised.

52.     Macys defied any sense of fair treatment compared to the normal judicial system, especially as

---

[10]. Obstruction of Justice. Definition. Wex Legal Dictionary. Retrieved March 3, 2019 from
     https://www.law.cornell.edu/wex/obstruction_of_justice
[11]. HURN v. MACY'S, INCORPORATED; DAVID HURN, Plaintiff-Appellant, v. MACY'S, INCORPORATED, Defendant-Appellee.
     United States Court of Appeals, Seventh Circuit. Submitted June 22, 2018. Decided June 25, 2018.

a citizen's entitlement. Thus, billing arbitration as an "alternative to court" falsely advertises its function.

53.     The Plaintiff also decried discrimination due to SES and felt that the Arbitrator nor AAA did not care that she did not have the funds for several processes that this Arbitrator wanted her to pursue such as calling expert witnesses.

54.     Had the Plaintiff known she would not have been treated fairly and equitably in the Arbitration process facilitated by the American Arbitration Association, she would never had agreed to this arbitration agreement[12] presented by Macys.

55.     Finally, Macys did not adhere to West Virginia Law[13] in this arbitration proceeding of Vogt v. Macys. They were in clear violation of the provision in the Statue 55-10-2.3. The presentation given during new-hire at Macys did not disclose the real nature of arbitration and the unethical and allegedly illegal acts committed by Macys. Because of that misinformation, the Plaintiff was duped into this horribly unethical process which caused her further pain and suffering.

Christina M. Vogt
PO Box 76
Great Cacapon, WV 25422
304-261-5783

---

12. Supra Note 6.

[13]. 2017 West Virginia Code CHAPTER 55. ACTIONS, SUITS AND ARBITRATION; JUDICIAL SALE. ARTICLE 10. ARBITRATION.
§§55-10-2. Declaration of public policy; legislative findings.
Universal Citation: WV Code § 55-10-2 (2017)
The Legislature finds that:
(1) Arbitration, as a form of alternative dispute resolution, offers in many instances a more efficient and cost-effective alternative to court litigation.
(2) The United States has a well-established federal policy in favor of arbitral dispute resolution, as identified both by the Federal Arbitration Act, 9 U.S.C. §1, et seq., and the decisions of the Supreme Court of the United States.
(3) Arbitration already provides participants with many of the same procedural rights and safeguards as traditional litigation, and ensuring that those rights and safeguards are guaranteed to participants will ensure that arbitration remains a fair and viable alternative to court litigation and guarantee that no party to an arbitration agreement is unfairly prejudiced by agreeing to an arbitration agreement or provision.

**REGISTERED AGENT OF SERVICE**

CORPORATE CREATIONS NETWORK INC.

126 East Burke Street

Martinsburg, WV 25401

**CORPORATE ADDRESS**

MACY'S INC.

7 West Seventh Street

Cincinnati, Oh 45202

## PART II

### INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, Plaintiff hereby submits the following Interrogatories to Defendant. Plaintiff requests that Defendant serve its answers in writing within 30 days of service of these Interrogatories.

For the purpose of these Interrogatories only, Plaintiff has used the definitions set forth below.

### I.  Definitions

As used in these Interrogatories:

1. "Agreement" means a contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons.

2. "Any" means one or more.

3. "Or" means "and/or"; and means "and/or".

4. "Communication" means any disclosure, transfer, or exchange of information or opinion, however made.

5. "Consultant" means any person that prepares, constructs, assembles a response and/or documents or otherwise fulfills a service for Macy's. It could be an organization, a person(s). Law firms, lawyers, paralegals, or any other sort of service that is providing a service to Macys.

6. The phrases "describe in detail" or "explain" or "list" or "provide" as used in these interrogatories includes a request for a complete description and explanation of the facts, circumstances, analysis, opinion and other information relating to (as that phrase is defined below) the subject matter of a specific interrogatory.

7. "Document" means any written, recorded, or graphic material of any kind, whether prepared by you or by any other person, which is in your possession, custody, or control. The term includes agreements; contracts; letters; telegrams; inter-office communications; memoranda; reports; records; instructions; specifications; notes; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; electronic-mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs.

The term "document" or "paperwork" or "communications" also includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers; any such document is to be produced in a reasonably legible and usable form. The term "document" includes all drafts of a document and all copies that differ in any respect from the original, including any notation, underlining, marking, or information not on the original. The term also includes information stored in, or accessible through, computer or other information retrieval

systems (including any computer archives or back-up systems), together with instructions and all other materials necessary to use or interpret such data compilations.

Without limitation on the term "control" as used in the preceding paragraph, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person.

8. "arrangement with a consultant or outside adviser, consultant, etc." means any proposed or actual agreement, arrangement, policy, program, practice, term or condition of your company that:

9. "Identify" or "identity" means to state or a statement of:

a. in the case of a person other than a natural person, its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer, as well as, if it has a person other than a natural person that ultimately controls it, that other person's name, the address of that person's principal place of business (including zip code), that other person's telephone number, and the name of that other person's chief executive officer;

b. in the case of a natural person, his or her name, business address and telephone number, employer, and title or position;

c. in the case of a communication, its date, type (e.g., telephone conversation or discussion), the place where it occurred, the identity of the person who made the communication, the identity of the person who received the communication, the identity of each other person when it was made, and the subject matter discussed;

d. in the case of a document, the title of the document, the author, the title or position of the author, the addressee, each recipient, the type of document, the subject matter, the date of preparation, and its number of pages; and

e. in the case of an agreement, its date, the place where it occurred, the identity of all persons who were parties to the agreement, the identity of each person who has knowledge of the agreement and all other persons present when it was made, and the subject matter of the agreement.

10. "Including" means including, but not limited to.

11. "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office or other business or legal entity, whether private or governmental.

12. "Relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, studying, commenting or reporting on, mentioning, analyzing, or referring, alluding, or pertaining to, in whole or in part.

13. "Relevant time period" means the time period stated in paragraph 1 of the Instructions.

14. "Year" means calendar year or the twelve-month period on which your business records are based; if the latter is used in responding to a interrogatory, specify the twelve month period used.

15. "You," "your" or "your company" means the American Arbitration Association or ADR.org or any other name used to identify this corporation such as AAA, etc.

16. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted. The term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following interrogatories all information or documents that would be excluded absent this definition.

## II. Instructions

1. *Unless otherwise specified, these interrogatories are limited to the time period from January 1, 2017, to and including the date of service of these interrogatories.*

2. For any paragraph that requests information relating to any type of records or documents, personnel information, contractor information, the information called for includes all information in your possession, custody or control maintained in both the United States or in any other country.

3. Where knowledge, information, or documents are requested, such request encompasses knowledge, information or documents in your possession, custody or control, or in the possession, custody or control of your staff, agents, employees, representatives and, unless privileged, attorneys, or any other person who has possession, custody or control of your proprietary knowledge, information or documents.

4. Pursuant to Fed. R. Civ. P. 26(e), you are under a duty seasonably to amend any answer to these interrogatories for which you learn that the answer is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to us during the discovery process or in writing.

5. For any interrogatory or part of an interrogatory which you refuse to answer under a claim of privilege, submit a sworn or certified statement from your counsel or one of your employees in which you identify the nature of the information withheld; specify the grounds of the claimed privilege and the paragraph of these interrogatories to which the information is responsive; and identify each person to whom the information, or any part thereof, has been disclosed.

6. Answer each interrogatory fully. If you object to any interrogatory, state the reasons for objection and answer to the extent the interrogatory is not objectionable. If you are unable to answer an interrogatory fully, submit as much information as is available, explain why your answer is incomplete, and identify or describe all other sources of more complete or accurate information.

7. For any record or document responsive or relating to these interrogatories which is known to have been destroyed or lost, or is otherwise unavailable, identify each such document by author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document.

8. No agreement, understanding, or stipulation by the Department of Justice or any of its representatives purporting to modify, limit, or otherwise vary these interrogatories shall be valid or binding on the Department of Justice unless confirmed or acknowledged in writing (or made of record in open court) by a duly authorized representative thereof.

9. Please sign and date this set of interrogatories when completed. This signature is an affidavit of truth, and is legally binding under the law.

## III. Interrogatories First Set

1.  Who had any involvement in this case for Macy's?

    a.  Please provide all names and contact information for all those involved in the American

        Arbitration Case such as Macy's employees, Macy's consultants, lawyers, etc., AAA

        contacts, and any other persons known or unknown to the Plaintiff.

2.  Please provide the Macy's case file with all communications including

    a.  those not seen by AAA and the Plaintiff such as internal communications;

    b.  any and all communications with any legal staff including Macy's internal legal staff and

        Macy's external lawyers such as Steptoe and Johnson;

    c.  outside or internal consultants;

    d.  any and all communications with the AAA about this case or the Macy's Inc.

        Representative.

3.  Please provide any documentation that was requested during the AAA case such as

    a.  theft notes, records, etc. where the Plaintiff has stated there was a large investigation in

        Home Pack/Pack or Returns during the first half (January – June) of 2016;

    b.  documentation about the employment of Rebecca Lynn Wills,

    c.  any other notes and or records or requests not previously given to the Plaintiff (i.e.,

        Claimant).

4.  Please name all the people who prepared the affidavit statements submitted to the Plaintiff

    (Claimant in this case). This includes those of Tonna Bonhoff, Michelle Powell, Jessica Wines,

    Casey Calahan, and any others submitted.

5.  Who (besides himself) prepared Jeffrey Hottle for deposition?

6. Please give the name and contact information for Ms. Avins' boss at Macys as well as any staff members of Ms. Avins' team – including legal advisors.

    a. Who advised her legally?

    b. Who helped her prepare any statements, interrogatories, depositions, motions or any other legal documents?

    c. Please provide an organizational chart for Ms. Avins' past organization if available.

7. Please provide the last known contact information for Ms. Julie Avins.

## Statement of Accuracy, Truthfulness and Completeness of Interrogatories

I, _____, attest that these interrogatories are answered fully and

truthfully. This is a legally binding signature, and I understand I am fully and legally responsible

for the accuracy, completeness and truthfulness of these interrogatories.

_____          _____

Name                                                    Date

**Please notarize this signature below.**

# SUMMONS

E-FILED | 3/28/2019 12:37 PM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine

### IN THE CIRCUIT OF BERKELEY WEST VIRGINIA
## Christina Vogt v. Macy's Inc.

Service Type:     Circuit Clerk - Certified Mail - No Copy Fee

NOTICE TO:   Macy's Inc., 7 West Seventh St., Cincinnatti, OH 45202

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Christina Vogt, P.O. Box 76, Great Cacapon, WV 25422

THE ANSWER MUST BE MAILED WITHIN 20 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

3/28/2019 12:37:32 PM                     /s/ Virginia Sine
_____            _____
          Date                                              Clerk

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on   _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to   _____

☐ Not Found in Bailiwick

_____            _____
          Date                                      Server's Signature



E-FILED | 3/29/2019 8:28 AM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.c

OFFICIAL USE

19-C-101
3/28/19

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)      $
☐ Return Receipt (electronic)    $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required       $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

Total Postage and Fees
$

Sent To  Mavis Inc.
Street and Apt. No., or PO Box No.  7 West 7th St
City, State, ZIP+4®  Cincinnati OH 45203

7016 1830 0000 6091 8612

PS Form 3800, April 2015 PSN 7530-02-000-9047      See Reverse for Instructions

E-FILED | 3/29/2019 8:33 AM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. 14-C-101 | A. Signature<br>X _____ □ Agent<br>□ Addressee<br>B. Received by (Printed Name)  C. Date of Delivery |
| 1. Article Addressed to:<br><br>Macy's Inc.<br>7 West Seventh St.<br>Cincinnatti, OH 45202 | D. Is delivery address different from item 1?  □ Yes<br>If YES, enter delivery address below:  □ No<br><br>2019 MAR 25 A 11:29<br>MAP<br>VIRGINIA M. SINE, CLERK |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 3952 8060 7856 25 | 3. Service Type<br>□ Adult Signature<br>□ Adult Signature Restricted Delivery<br>□ Certified Mail®<br>□ Certified Mail Restricted Delivery<br>□ Collect on Delivery<br>□ Collect on Delivery Restricted Delivery<br>□ Insured Mail<br>□ Insured Mail Restricted Delivery<br>(over $500) | □ Priority Mail Express®<br>□ Registered Mail™<br>□ Registered Mail Restricted Delivery<br>□ Return Receipt for Merchandise<br>□ Signature Confirmation™<br>□ Signature Confirmation Restricted Delivery |
| 2. Article Number (Transfer from service label)<br>7017 3380 0000 1684 8316 | |
| PS Form 3811, July 2015 PSN 7530-02-000-9053 | Domestic Return Receipt |

E-FILED | 4/15/2019 1:05 PM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine

## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.  19-C-101

1. Article Addressed to:

Mary's Inc.
7 West Seventh St.
Cincinnati, OH 45202

9590 9402 3952 8060 7853 59

2. Article Number (Transfer from service label)

7018 1830 0001 8091 8612

PS Form 3811, July 2015 PSN 7530-02-000-9053

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X

B. Received by (Printed Name)          C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3 MD CTY
2019 APR -8 PM 3: 32
VIRGINIA R. SINE CLERK

3. Service Type          PS - A520
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

E-FILED | 4/15/2019 1:08 PM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits. 19-C-101

1. Article Addressed to:

Macy's Inc.
7 West Seventh St.
Cincinnati, OH 45202

9590 9402 3952 8060 7853 59

2. Article Number (Transfer from service label)

7018 1830 0001 8091 8612

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS S**

A. Signature

X _____

B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

MID CITY
2019 APR -8 PP 3: 32
APR 04 20
VIRGINIA M. SINE, CLERK

3. Service Type                        ☐ Priority Mail Express®
☐ Adult Signature PS - 452          ☐ Registered Mail™
☐ Adult Signature Restricted Delivery ☐ Registered Mail Restricted
☐ Certified Mail®                       Delivery
☐ Certified Mail Restricted Delivery  ☐ Return Receipt for
☐ Collect on Delivery                   Merchandise
☐ Collect on Delivery Restricted Delivery ☐ Signature Confirmation™
☐ Insured Mail                        ☐ Signature Confirmation
☐ Insured Mail Restricted Delivery      Restricted Delivery
   (over $500)

Domestic Return Receipt

E-FILED | 4/29/2019 10:39 AM
CC-02-2019-C-101
Berkeley County Circuit Clerk
Virginia Sine

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits. 19-C-101

1. Article Addressed to:

Macy's Inc.
7 West Seventh St.
Cincinnati, OH 45202

9590 9402 3952 8060 7853 59

2. Article Number (Transfer from service label)

7018 1830 0001 8091 8612

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

2019 APR -8 P 3: 32
APR 04 2019
VIRGINIA M. SINE CLERK

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt