**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**CHRISTINA M. VOGT,**

Plaintiff,

**v.** **CIVIL ACTION NO.: 3:19-CV-69 (GROH)**

**MACY'S INC.,**

Defendant.

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION TO DISMISS**

Currently pending before the Court is the Plaintiff's Motion to Remand this Case to the Berkeley Count Circuit Court of Martinsburg, WV [ECF No. 10], filed on May 29, 2019, and the Defendant's Motion of Macy's, Inc. to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted [ECF No. 4], filed on May 9, 2019. Both matters have been fully briefed and are now ripe for review. For the following reasons, the Plaintiff's motion to remand is **DENIED** and the Defendant's motion to dismiss is **GRANTED**.

## I. Factual and Procedural Background

On May 2, 2019, Macy's, Inc. ("Defendant") removed this matter from the Berkeley County Circuit Court on the basis the Court has diversity jurisdiction over the matter. ECF No. 1. The Plaintiff's claims in her amended complaint arise from the arbitration in a previous case before this Court, Civil Action No. 3:16-CV-121. See ECF No. 1-1 at 32-45. The background of the Plaintiff's allegations are as follows.[1]

[1] For a motion to dismiss, the Court must assume that the Plaintiff's "well-pleaded factual allegations" are true. Accordingly, the Court recites the facts as alleged in the Plaintiff's Amended Complaint [ECF No. 1-1 at 32-45].

In January of 2017, the parties entered into arbitration with the American Arbitration Association. The first arbitrator assigned to the parties' case recused himself. The Plaintiff alleges the second arbitrator assigned to the case "was rude, demeaning and at times emotionally abusive to the Plaintiff, who was suffering from, and on medication for, a Mood Disorder (Depression). [The Plaintiff] also had elements of stress disorder." Id. at 33. The Plaintiff requested the second assigned arbitrator recuse himself because he was "noticeably biased." Id. The Defendant opposed the arbitrator's recusal and the arbitrator ultimately refused the Plaintiff's request. The Plaintiff reached out to the assistant to the President of the American Arbitration Association about the arbitrator's bias. The Plaintiff then received a warning from her case management team that contact to anyone outside of her case management team was a violation of the American Arbitration Association's rules. At some point after the arbitrator's refusal to recuse himself, the Plaintiff filed a complaint with the Pennsylvania State Bar in an attempt to "hopefully encourage recusal." Id. at 34.

In August of 2018, the parties had a phone conference with the arbitrator to schedule a hearing date. During the phone conference, "Macys violated the rules of confidentiality and was disrespectful to the Plaintiff." Id. at 35. After the phone conference took place, the "[a]rbitrator recused himself" and then the American Arbitration Association informed "the Plaintiff she had been 'disrespectful' to the [a]rbitrator" and they were not going to administer her case. Id. at 36.

The Plaintiff asserts five claims against the Defendant. The Plaintiff's first claim is for false advertising, alleging the Defendant "duped her into this arbitration based upon false advertising with the promise of laws governing the process, neutral arbitrators and

neutral case managers." Id. at 38. The Plaintiff's second claim is for intentional infliction of emotional distress, alleging the Defendant "knew she was depressed and on medication" and the Defendant's "dishonesty further victimize[d] [her], and [her] medication was increased during arbitration and her diagnosis worsened." Id. at 39. The Plaintiff's third claim is for breach of contract, alleging the Defendant breached the terms and conditions of its contract by not allowing her to complete depositions. The Plaintiff's fourth claim is for negligence, alleging the Defendant had a "legal duty to provide a fair, equitable venue for the Plaintiff to have her case heard." Id. at 41. Lastly, the Plaintiff's fifth claim is for obstruction, alleging the Defendant obstructed justice by tampering with witnesses, altering documents, concealing information and committing perjury.

The Plaintiff's Motion to Remand this Case to the Berkeley County Circuit Court of Martinsburg, WV [ECF No. 10] and the Defendant's Motion of Macy's Inc. to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted [ECF No. 4] are currently pending before the Court. The Court will address each of the motions in turn.

## II. Motion to Remand

On May 29, 2019, the Plaintiff filed a Motion to Remand this Case to the Berkeley County Circuit Court of Martinsburg, WV. ECF No. 10. The Defendant filed a Response in Opposition to Plaintiff's Motion to Remand on June 10, 2019. ECF No. 15. On June 17, 2019, the Plaintiff filed a Reply to Memorandum of Law in Response in Opposition to Plaintiff's Motion to Remand. ECF No. 19.

In support of the Plaintiff's motion, she argues "diversity is questionable due to the business structure of Macys.com an LLC registered in the State of West Virginia. The member is listed as a Delaware Corporation, Macy's Retail Holdings Inc. where no

officers or board members or other 'members' or 'owners' have been clearly identified as living outside the State of West Virginia." ECF No. 10 at 5. The Plaintiff further states "the defendants have absolutely no idea what any of plaintiff's claims for relief are based upon; thus making their 'evidence' or 'preponderance evidence' of a claim of more than $75,000 completely speculative." Id. at 3.

In response, the Defendant argues that the "Plaintiff cannot bring suit against a corporation and then rely upon limited liability company law to argue citizenship." ECF No. 15 at 1. The Defendant further argues that the "Plaintiff cannot obscure the amount in controversy and then assert that it is insufficient to justify removal." Id.

Upon review, and as more fully discussed below, the Court finds it does have subject matter jurisdiction over this matter.

**A. Applicable Law**

A Defendant may remove a civil action from state to federal court when the latter has original subject matter jurisdiction. Either diversity or federal question jurisdiction satisfies this requirement. See 28 U.S.C. § 1441. Federal district courts enjoy diversity jurisdiction over cases between citizens of different states when the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332.

The removing party bears the burden of establishing that jurisdiction is proper. See Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir.1994). Moreover, courts have long recognized that a plaintiff is the master of her claim. See Oklahoma Tax Comm'n v. Graham, 489 U.S. 838 (1989). Therefore, "if [a plaintiff] chooses not to assert a federal claim . . . or properly joins a nondiverse party, defendants cannot remove the action to federal court on the ground that an alternative course of conduct available to the

plaintiff would have permitted removal of the case." 14B Charles Wright, Federal Practice and Procedure, § 3721, p. 59 (2009).

Significantly, the Fourth Circuit has plainly stated that "if federal jurisdiction is doubtful, a remand is necessary." Mulcahey, 29 F.3d 148, 151 (citing In re Business Men's Assur. Co. of America, 992 F.2d 181, 183 (8th Cir. 1993); Cheshire v. Coca–Cola Bottling Affiliated, Inc., 758 F. Supp. 1098, 1102 (D.S.C. 1990)). Indeed, the Mulcahey Court explained that removal jurisdiction must be strictly construed because it raises significant federalism concerns. Id. (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941).

**B. Discussion**

**i. Diversity of Citizenship**

The Plaintiff argues that the parties are not diverse, asserting that "Macys.com [is] an LLC registered in the State of West Virginia." ECF No. 10 at 5. However, the Plaintiff has brought this action against Macy's Incorporated. For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Macy's is incorporated under the laws of the State of Delaware and maintains its principal place of business in Cincinnati, Ohio. The Plaintiff is a citizen of the State of West Virginia. The Court finds there is complete diversity of citizenship between the parties.

**ii. Amount in Controversy**

Here, the Plaintiff argues that the amount in controversy has not been met. Amount in controversy is determined by "considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal." Sayre

v. Potts, 32 F. Supp. 2d 881, 886 (S.D. W. Va. 1999) (citing Landmark Corp. v. Apogee Coal Co., 945 F. Supp. 932, 936–37 (S.D. W. Va. 1996)). When a complaint lacks a specific amount of damages, it is the defendant's burden to show that the claim satisfies the requisite jurisdictional amount. Seifert v.Nationwide Mut. Ins. Co., 2007 WL 1381521 (N.D. W. Va. May 9, 2007) (citing Mullins v. Harry's Mobile Homes, Inc., 861 F.Supp. 22, 23 (S.D. W. Va. 1994)).

To calculate this amount, a court must consider the record and make an independent evaluation to determine whether the amount in controversy has been satisfied. Weddington v. Ford Motor Credit Co., 59 F. Supp. 2d 578, 584 (S.D. W. Va.1999); see also Mullins (specifically stating that the court may consider the complaint, removal petition and "other relevant matters in the file"). Courts in this District have "consistently applied the preponderance of evidence standard to determine whether a defendant has met its burden of proving the amount in controversy." Seifert, at *1 (internal quotations omitted).

Further, when a civil action originated in state court, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court . . . ." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290 (1988). In conducting this analysis, a court "is not required to leave its common sense behind." Mullins, 861 F.Supp. at 24.

The Plaintiff's asserts five claims, including (1) false advertising, (2) intentional infliction of emotional distress, (3) breach of contract, (4) negligence, and (5) obstruction of justice. See ECF No. 1-1. The Defendant argues the Plaintiff's intentional infliction of

emotional distress claim alone supports an amount in controversy exceeding $75,000.00. The Defendant cites to various cases to support this assertion:

> although the judgment was reversed on appeal, a jury returned a verdict of $500,000.00 for alleged intentional infliction of emotional distress in Dzinglinski v. Weirton Steel Corp., 191 W. Va. 278, 445 S.E.2d 219 (1994). Indeed, damages in excess of $75,000.00 for cases including the tort of "outrage" are not unusual. See Chafin v. Logan County Comm'n, (U.S.D.C. S.D.W. Va. Oct. 12, 2012) (Section 1983 and intentional infliction of emotion distress claim suit resulted in a verdict of $125,000 and punitive damages); Lenahan v. Valentine & Kebartas (Raleigh County Cir. Ct. Jan. 15, 2016) (Case alleging Consumer Credit Protection violations and the intentional infliction of emotional distress resulted in judgment in excess of $109,000 but Plaintiff had stipulated to $75,000.00 damage cap).

ECF No. 1 at 3-4. In addition, the Defendant argues that the Plaintiff can recover punitive damages "if there is 'substantial and concrete evidence of a plaintiff's physical, emotional or psychiatric injury,'" and "[i]n West Virginia, if punitive damages are recoverable, they can total 'four times the amount of compensatory damages or $500,000, whichever is greater.'" Id. at 4-5 (citations omitted). The Defendant asserts the Plaintiff's allegations would support a punitive damages award if proven true because she alleges the Defendant knew she was depressed and on medication and further victimized her, resulting in an increase in her medication and causing her diagnosis to worsen.

The Defendant also sets forth that the Plaintiff's other claims support an amount in controversy exceeding $75,000.00.

> See, e.g., Federal Trade Comm'n v. Ramey Motors, Inc., (U.S.D.C. S.D.W. Va. Sep. 9, 2015) (Ramey Motors, Inc. settled with FTC for an $80,000.00 penalty for alleged false advertising); Rice v. Comm. Health Ass'n d/b/a Jackson Gen. Hosp., (U.S.D.C. S.D.W. Va. Dec. 1 1998) (case alleging breach of employment contract resulted in judgment of $2,170,393.00, reduced to $751,564.00); Edwards v. McElliott's Trucking, LLC, (U.S.D.C. S.D.W. Va. Aug. 14, 2018) (negligence case resulted in verdict in excess of $5,000,000.00).

Id. at 5.

The Defendant is not relying on mere speculation to argue the amount in controversy has been met. The Defendant has considered the Plaintiff's five claims, the extent of the claims if the Plaintiff is successful and other cases where similar claims have been asserted and the amount that was awarded in those matters. The Plaintiff's intentional infliction of emotional distress claim alone supports a preponderance of evidence standard here that the amount in controversy has been met. The Plaintiff does not just assert the Defendant's actions were outrageous causing her emotional distress, she alleges the Defendant "knew she was depressed and on medication" and the Defendant's "dishonesty further victimize[d] [her], and [her] medication was increased during arbitration and her diagnosis worsened." Id. at 39. This claim, if successful, would not provide solely for compensatory damages, but also for an award of punitive damages. It is clear the Plaintiff's intentional infliction of emotional distress claim, along with her four other claims, satisfy the amount in controversy for diversity jurisdiction.

**C. Conclusion**

The Court finds there is complete diversity between the parties and the amount in controversy has been met. Accordingly, the Plaintiff's motion [ECF No. 10] is hereby **DENIED.**

## III. Motion to Dismiss

On May 9, 2019, the Defendant filed a Motion of Macy's, Inc. to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted. ECF No. 4. On June 3, 2019, the Plaintiff filed a Memorandum of Law in Response to Macy's Inc. Motion to Dismiss. ECF No. 11. On June 10, 2019, the Defendant filed a Reply to Memorandum of Law in Response to Motion of Macy's, Inc. to Dismiss. ECF No. 16.

In the Defendant's motion, it argues this matter "should be dismissed as a matter of judicial administration." ECF No. 4 at 1. The Defendant further argues the "Plaintiff's claims are largely based upon matters occurring in the parallel proceeding, which are absolutely privileged in accordance with the litigation privilege." Id. Lastly the Defendant avers that the Plaintiff's claims also "fail for reasons such as the lack of causation and the lack of an implied private cause of action." Id. In the Plaintiff's response she appears to abandon majority of her claims by stating she believes her false advertising claim has merit and she believes the other claim that "would hold is negligence, but only after discovery." ECF No. 11 at 2.

Upon review, and as more fully discussed below, the Court finds that the Defendant's communications and conduct in the prior arbitration is protected under the litigation privilege. Accordingly, the Plaintiff's claims must be dismissed with prejudice.

**A. Applicable Legal Standards**

West Virginia has long recognized the defense of litigation privilege to slander and libel suits and has often referenced the Restatement Second of Torts for guidance. See Wilson v. Glasser, 2003 WL 25565341 (W. Va. Cir. Ct. Jan. 22, 2003) (referring to the Restatement Second of Torts for guidance as the Supreme Court of Appeals of West Virginia often does). For the litigation privilege to apply, two requirements must be met: (1) the statement must have been made preliminary to or during the course of a judicial proceeding and the (2) statement must have some relationship to the proceeding. Id. There is a low threshold for a party to show a statement is related to the proceeding because there is a strong public policy in favor of the litigation privilege. Id.

The Supreme Court of Appeals of West Virginia extended the litigation privilege to apply to conduct occurring during the litigation process. In making this decision, the court considered the policies set forth in Justice Davis's concurring opinion in Barefield v. DPIC Companies, Inc., 215 W.Va. 544, 560 (2004). In her concurring opinion Justice Davis stated:

> [t]he public policies associated with the litigation privilege include: (1) promoting the candid, objective and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement.

Clark, M.D., v. Druckman, 218 W.Va. 427, 433 (2005) (citations omitted). In Clark, the court found "no reason [in light of these policies] to distinguish between *communication* made during the litigation process and *conduct* occurring during the litigation process. Id. The Court held "that the litigation privilege is generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney if the alleged act of the attorney occurs in the course of the attorney's representation of an opposing party and is conduct related to the civil action. Id. at 434. The court cautioned that its "ruling . . . does not permit attorneys or their clients to act without consequence during the litigation process [because the] *Rules of Civil Procedure*, [the] *Rules of Professional Conduct*, and the court's inherent authority provide adequate safeguards to protect against abusive and frivolous litigation tactics." Id. The court referenced available sanctions and disciplinary actions that could be sought when a party is confronted with misconduct from the opposing party or their counsel. Id.

When considering the litigation privilege under California and Wisconsin law, the United States District Court for the Southern District of California found "[t]he litigation privilege is not limited to actions brought in court. . . . The privilege applies to all arbitration proceedings because of the analogy to a judicial proceeding." Rasidescu v. Midland Credit Management, 496 F. Supp. 2d 1155, 1160 (S.D. Ca. 2007). In West Virginia, the litigation privilege applies to "legislative, judicial and quasi-judicial proceedings and other acts of the State." Collins v. Red Roof Inns, Inc., 211 W. Va. 458, 598 (2002) (quoting Parker v. Appalachian Electric Power Co., 126 W.Va. 666, 672 (1944)). Accordingly, West Virginia litigation privilege, like California and Wisconsin, would also extend to arbitration proceedings. Whether the litigation privilege applies is a question of law to be determined by the court. Riccobene v. Scales, 19 F. Supp. 2d 577, 582 (N.D. W.Va. 1988).

**B. Discussion**

The Defendant argues that any statements or conduct made during the pendency of 3:16-CV-121 are absolutely privileged in accordance with the litigation privileged. ECF No. 5 at 6.

Each of the Plaintiff's five claims, (1) false advertising, (2) intentional infliction of emotional distress, (3) breach of contract, (4) negligence and (5) obstruction, are related to the Defendant's communications or conduct during the arbitration proceedings. Moreover, a lot of the Plaintiff's allegations are not regarding the Defendant's communications and conduct at all, but rather the arbitrator's conduct and his alleged bias. The Plaintiff's false advertising claim is revolved around her claim that the arbitrator was biased and would not recuse himself. She believes the Defendant "duped" her into

arbitration based on false advertisement that there would be neutral arbitrators and it would be a fair and neutral process. The Plaintiff's second claim is regarding the Defendant's dishonesty throughout the course of the arbitration proceedings. The Plaintiff's third claim involves the Defendant's alleged failure to allow her to conduct depositions to gain information to support her claims. The Plaintiff's fourth claim is regarding the Defendant's alleged duty to provide her a "fair, equitable venue . . . to have her case heard." ECF No. 1-1 at 41. Lastly, the Plaintiff's claim for obstruction—which claim does not even provide for a private cause of action—alleges the Defendant tampered with witnesses, altered documents, concealed information and committed perjury.

Each of the Plaintiff's allegations is regarding communications or conduct made preliminary to or during the course of the arbitration proceedings and the communications and conduct are directly related to the arbitration proceeding. If the Plaintiff believed there was misconduct by the opposing party she should have challenged this conduct through alternative remedies that were available to her. The Defendant's conduct is not subject to subsequent litigation because it is absolutely privileged in accordance with the litigation privilege.

**C. Conclusion**

The Plaintiff's claims must be dismissed with prejudice because the claims are subject to the litigation privilege. Accordingly, the Defendant's motion [ECF No. 4] is hereby **GRANTED** and the Plaintiff's complaint is hereby **DISMISSED WITH PREJUDICE**.

## IV. Conclusion

For the aforementioned reasons, the Court **ORDERS** that the Plaintiff's Motion to Remand this Case to the Berkeley County Circuit Court of Martinsburg, WV [ECF No. 10] is hereby **DENIED** and the Defendant's Motion of Macy's, Inc. to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted [ECF No. 4] is hereby **GRANTED**. The Plaintiff's complaint [ECF No. 1] is **DISMISSED WITH PREJUDICE**. The Plaintiff's Memorandum of Law to Compel Ruling on the Plaintiff's Motion to Remand [ECF No. 23] and Motion to Lift Stay on Discovery [ECF No. 43] are hereby **TERMINATED** as **MOOT**.

The Clerk is **DIRECTED** to **STRIKE** this matter from the Court's active docket. The Clerk is further **DIRECTED** to transmit a copy of this Order to all counsel of record herein.

**DATED**: March 17, 2020

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE